**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rico Jerome Campbell,<br><br>   Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>   Defendant. | No. CV-23-02614-PHX-KML (JZB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE KRISSA M. LANHAM, UNITED STATES DISTRICT JUDGE:

Plaintiff challenges the denial of his application for Disability Insurance Benefits by the Commissioner of the Social Security Administration ("Defendant"). Plaintiff filed a Complaint seeking judicial review of that denial. (Doc. 1.) Having reviewed Plaintiff's Opening Brief (doc. 17), Defendant's Response Brief (doc. 22), Plaintiff's Reply Brief (doc. 25), and the Administrative Record ("AR.") (doc. 15, 16), the Court issues the following Report and Recommendation in accordance with the December 28, 2023, Order of the District Court (doc. 12), and pursuant to 28 U.S.C. § 636(b) and Rule 72.2(a)(10), Local Rules of Civil Procedure. For the reasons explained below, the Court finds the Commissioner's decision should be reversed and remanded for additional proceedings.

**I.   Background.**

Plaintiff filed a claim for Title II disability benefits in June 2021 alleging disability

beginning February 20, 2019. (AR. at 15.) Plaintiff's date last insured ("DLI") for the purposes of establishing disability under Title II is December 31, 2020. (AR. at 17.)[1] The Commissioner denied Plaintiff's claim in September 2021 and upon reconsideration in November 2021. (AR. at 69-72, 81-84.) Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 18, 2023. (AR. at 32-53.)

On August 3, 2023, the ALJ issued an unfavorable decision. (AR. at 12-29.) The ALJ concluded that Plaintiff had the capacity to perform "medium work" as of his DLI, enabling him to perform his past relevant work. (AR. at 18, 21.) Plaintiff then appealed to the Social Security Appeals Council, and the Appeals Council denied the request for review on October 20, 2023. (AR. at 9-10.) This appeal follows.

Three issues are presented for review: (1) whether the ALJ erred by rejecting the medical opinions of Plaintiff's treating dermatologist, Dr. Toni Stockton, M.D.; (2) whether the ALJ erred by rejecting the medical opinions of Plaintiff's treating oncology nurse practitioner, Megan Lorenz, FNP; and (3) whether the ALJ cited clear and convincing reasons supported by substantial evidence for discrediting Plaintiff's symptom testimony.

**II.     The Five-Step Disability Analysis and the Legal Standard.**

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial, gainful work activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's

---

[1] In a Title II case, the claimant must establish his disability began on or before his date last insured. *Wellington v. Berryhill*, 878 F.3d 867, 872 (9th Cir. 2017) ("A claimant can qualify for SSDI only if her disability begins by her date last insured[.]")

impairment or combination of impairments meets or is medically equivalent to an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to step four, where he determines whether the claimant is capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ finds the claimant can perform such work, the claimant is not disabled. *Id.* If the ALJ finds the claimant cannot perform this work, the claimant is disabled. *Id.*

The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

**III.   Analysis.**

    **A.   The ALJ Cited a Clear, Convincing Reason Supported by Substantial Evidence for Discrediting the Plaintiff's Symptom Testimony.**

Plaintiff testified that he experiences symptoms of skin deformities, tightness, and inflammation from a form of blood cancer that presents on the skin. (AR at 38.) He testified that the plaques dry out and "mushroom" and "crack open," and that the lesions itch, and he scratches them. (*Id.* at 38–39.) He testified they are "nasty looking" and

1  "difficult to deal with." (*Id*. at 38.) He added that when the plaques crack open, they
2  bleed. (*Id*. at 39.) Plaintiff stated the plaques can appear anywhere on the body, including
3  on his hands, legs, the back of his knees, and the back of his head. (*Id*.) He reported
4  difficulty using his hands, and that tightness and inflammation interfere with his gripping,
5  such as when he would try to open a jar. (*Id*. at 45.) He said he is always tired and feels
6  weighed down, and that he has no energy. (*Id*. at 44.) He reported taking naps during the
7  day prior to his DLI, and that he feels his fatigue is getting worse. (*Id*. at 44.) He stated he
8  has cognitive issues, that his memory is slowly slipping, that he has difficulty
9  comprehending like he once did, that he has word-finding difficulties, and that, during
10 2019 and 2020, he needed help remembering doctor's appointments. (*Id*. at 44–45)

   In the decision, the ALJ found, "There is minimal evidence showing limitations
before the date last insured, December 31, 2020." (*Id*. at 19.) The ALJ noted Plaintiff's
diagnoses of "cutaneous T-cell lymphoma," "eczema/dermatitis," and "Prurigo Nodularis
and Mycosis fungoides," but also observed that "[r]ecords from 2021 show he was fully
active and able to carry on all pre-disease performance without restriction." (*Id*.)
(citations omitted). In an apparent contradiction, the ALJ added Plaintiff "was
symptomatic due to involvement of both hands [in April 2021] and his activity was
restricted." (*Id*.) The ALJ asserted Plaintiff "alleged he had boils on his hands, but there
is nothing in the medical record discussing this symptom[,]" although there was evidence
of "papules, plaque, and skin dermatitis." (*Id*.) The ALJ noted Plaintiff's itching
improved with treatment and his fatigue improved with CPAP usage. (*Id*.) The ALJ
stated there is no objective evidence in the record to support Plaintiff's mental
limitations. (*Id*.)

   To evaluate a claimant's symptom testimony, the ALJ must engage in a two-step
analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). "First, the ALJ must
determine whether the claimant has presented objective medical evidence of an
underlying impairment which could reasonably be expected to produce the pain or other
symptoms alleged." *Id*. Next, if there is no evidence of malingering, the ALJ must cite

"specific, clear, and convincing reasons," supported by substantial evidence, to discredit the testimony. *Id*. at 1014–15. "[A]n ALJ is responsible for determining the credibility of a claimant, [but] an ALJ cannot reject a claimant's testimony without giving clear and convincing reasons." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (*superseded on other grounds by* 20 C.F.R. § 404.1502(a)); *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Id.* While the ALJ need not engage in "extensive" analysis, he should, at the very least, "provide some reasoning in order for [a reviewing court] to meaningfully determine whether [his] conclusions were supported by substantial evidence." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015). Moreover, even if the ALJ explains his decision "with less than ideal clarity, a reviewing court will not upset the decision on that account if [his] path may reasonably be discerned." *Alaska Dept. of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004) (cleaned up); *see Brown-Hunter*, 806 F.3d at 492 (applying this rule to the Social Security context). Where substantial evidence supports the ALJ's assessment of a claimant's subjective complaints, a reviewing court will "not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). The Court finds the ALJ cited a clear, convincing reason for rejecting Plaintiff's symptom testimony.

To begin, the ALJ identified records from 2021 indicating that Plaintiff was "fully active and able to carry on all pre-disease performance without restriction[.]" (AR. at 19.) The ALJ's only citation in support is Plaintiff's hematology and oncology visit from July 2021, which indicates, "ECOG 0: Fully active, able to carry on all pre-disease performance without restriction." (AR. at 470.)[2] The treating doctor later notes in the record of that visit, "[T]he patient is symptomatic due to involvement of both hands and his activity is restricted[.]" (*Id.*) This internal inconsistency is repeated throughout

---

[2] The ECOG performance scale—ranging from 0, or no limitation, to 5, maximum limitation—"describes a patient's level of functioning in terms of their ability to care for themself, daily activity, and physical ability (walking, working, etc.)." *E.g.*, *Northrup v. Comm'r of Soc. Sec. Admin.*, No. CV 23-01250 PHX SMB (CDB), 2024 WL 2702545, at *17 (D. Ariz. May 6, 2024), *report and recommendation adopted*, No. CV-23-01250-PHX-SMB, 2024 WL 2699977 (D. Ariz. May 24, 2024).

Plaintiff's hematology and oncology records. (AR. at 473, 478-49, 481-82, 484-85.) Accordingly, the ALJ's rationale appears to be in the manner of "cherry-picking" evidence unfavorable to the claimant from the record, which is prohibited. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). Accordingly, this reason is insufficient.

Regarding Plaintiff's perfect score on a mental status examination in May 2023, the lack of objective medical evidence is insufficient alone to reject Plaintiff's symptom testimony. *See Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020) ("An ALJ[ ]may not discredit the claimant's subjective complaints solely because the objective evidence fails to fully corroborate the degree of pain alleged.") (citations omitted). As such, this reason is also insufficient.

Importantly, however, the ALJ also cited evidence from January 2021 indicating Plaintiff's fatigue was improved after restarting use of a CPAP machine. (AR. at 19, citing AR. at 349.) The record stated the claimant was "feeling better since restarting" his CPAP. (AR. at 349.) With respect to improvement, the ALJ is required to consider the "broader context" of a claimant's impairment. *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016). If the ALJ was to cite evidence of improvement, it "must in fact constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard." *Garrison*, 759 F.3d at 1018. The record both before and after the DLI shows Plaintiff reported and was assessed with fatigue. (*E.g.*, AR. at 355, 358, 477, 479, 517, 519, 556, 562, 568, 657.) But many of these visits reflect improvement in Plaintiff's fatigue, or only moderate or sporadic fatigue, contrary to the more severe fatigue Plaintiff described. (*Id*. at 335, 477, 556, 562, 568, 573, 580, 701.)[3] Consequently, the Court finds this constitutes a clear, convincing reason supported by substantial evidence sufficient to discredit Plaintiff's symptom testimony.

### B. The ALJ's Assessment of Medical Opinion Evidence.

Regulations effective March 27, 2017, provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) .

---

[3] Plaintiff described more severe fatigue at his hearing. (*Id*. at 44.)

. . including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must determine the persuasiveness of an opinion and articulate his analysis using two primary factors: supportability and consistency. 20 C.F.R § 404.1520c(b)(2). The degree of supportability is based on the extent to which a medical source presents "relevant[ ]objective medical evidence and supporting explanations" to justify a conclusion. 20 C.F.R § 404.1520c(c)(1). For the consistency factor, "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R § 404.1520c(c)(2). While the ALJ must still consider other factors relevant to the persuasiveness of the opinion, the ALJ generally need not articulate how they were considered, outside of limited circumstances. 20 C.F.R § 404.1520c(b)(3), (c)(3)–(5). "[A]n ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).

### 1. The ALJ's Decision to Discredit Dr. Stockton's Assessment Was Supported by Substantial Evidence.

Dr. Stockton, Plaintiff's treating dermatologist, assessed Plaintiff's limitations due to severe fatigue several times in the record. (AR. at 653-54, 679-80, 699-700.) She concluded, for instance, that Plaintiff "fatigued very easily due to disease [and] medication," that his fatigue occurred daily for two or more hours a day, that his fatigue was "severe," and that his limitations existed as of February 20, 2019. (AR. at 653-54.)

Addressing Dr. Stockton's opinions, the ALJ found, "There is no support in the medical record from this doctor for this doctor's opinions that the claimant's fatigue is severely disabling." (AR. at 20.) The ALJ discussed, for instance, medical records in January 2021 showing improvement to Plaintiff's fatigue and conflicting notes from another doctor of "only moderate fatigue and no other major side effects." (AR. at 20.)

The Court finds the ALJ addressed the regulatory factors and that his decision to discredit Dr. Stockton's medical opinion is supported by substantial evidence. There is

sufficient evidence to belie Dr. Stockton's conclusion Plaintiff's fatigue was severe. (AR. at 20, 654.) Contrary to Dr. Stockton's opinions, Plaintiff's medical records reflect his fatigue was often described as moderate. (*E.g.*, AR. at 477, 556, 562, 568, 657.) Consequently, because the ALJ cited reasons supported by substantial evidence for discrediting this opinion, the ALJ did not err in finding Dr. Stockton's opinion unpersuasive.

### 2. The ALJ Erred by Failing to Explain how He Considered the Supportability and Consistency Factors When Rejecting FNP Lorenz's Opinions.

FNP Lorenz assessed that Plaintiff had "pain [and] limited joint mobility," could sit for less than two hours in an eight-hour workday and stand and walk for less than two hours in an eight-hour workday, would need to miss more than six days of work per month, and would be off-task greater than 21% of an eight-hour work day. (AR. at 655.)[4] FNP Lorenz stated Plaintiff's pain and fatigue were "severe" and in existence on or before December 31, 2020. (AR. at 656.)

The ALJ concluded that FNP Lorenz's opinions were unpersuasive because they were "given after [t]he expiration of the DLI," and because FNP Lorenz "just gives a conclusory opinion that the claimant is disabled and does not cite anything in her experience or in the medical record to support [the] opinion." (AR. at 21.)

An ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *Woods*, 32 F. 4th at 792. The agency must "articulate . . . how persuasive" it finds "all of the medical opinions" from each doctor or other source and "explain how [it] considered the supportability and consistency factors" in reaching these findings. 20 C.F.R. § 404.1520c(b)(2).

Here, the ALJ did not adequately explain how he considered the supportability and

---

[4] While Dr. Stockton's assessments focus on Plaintiff's fatigue (AR. at 653-54, 679-80, 699-700), the basis of FNP Lorenz's assessment is Plaintiff's pain and limited joint mobility (AR. at 655-56).

- 8 -

consistency factors when finding that FNP Lorenz's opinions were unpersuasive. To begin, the fact that a medical opinion post-dates the claimant's date last insured is not, alone, a sufficient reason to reject it. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011) ("[T]his court has specifically held that medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition."). The ALJ cannot simply disregard an opinion that post-dates the claimant's DLI.

Regarding the ALJ's summary assertion that FNP Lorenz provided a "conclusory opinion" without citation to the record, an assessment of the supportability of a provider's opinion must include some consideration of that provider's own medical records. *Bogner v. Comm'r of Soc. Sec. Admin.*, No. CV-22-01908-PHX-DMF, 2023 WL 4734120, at *4 (D. Ariz. July 25, 2023) (noting the ALJ did not adequately address supportability because "the ALJ failed to discuss how Dr. Aubrey and NP Kazaka's treatment notes supported or did not support each provider's opinion."); *Lisa R. v. Comm'r of Soc. Sec.*, No. 3:22-CV-5296-DWC, 2023 WL 1277694, at *3 (W.D. Wash. Jan. 31, 2023). FNP Lorenz noted, for instance, that her conclusions and assigned limitations resulted from "objective, clinical, or diagnostic findings which have been documented either by [her], or elsewhere in the patient's medical records[.]" (AR. at 656.) She also indicated she had "considered and/or reviewed [her] treatment notes, records from other providers, radiographic reports, laboratory reports, [and the] patient's response to treatment[.]" (AR. at 656.) FNP Lorenz treated Plaintiff for years at Ironwood Cancer and Research Centers. (AR. at 466-88, 556-84, 608-28, 657-78, 701-10.) When addressing supportability, it was incumbent upon the ALJ to explain why FNP Lorenz's treatment notes do not support her findings.

Moreover, the ALJ apparently failed to discuss the consistency of FNP Lorenz's opinion with the other evidence of record. Under clear regulatory language, the ALJ is required to "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions[.]" 20 C.F.R. § 404.1520c(b)(2); *Woods*, 32 F.4th at

792 ("The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source, and explain how it considered the supportability and consistency factors in reaching these findings.") (cleaned up); *e.g.*, *Arroyo v. Comm'r of Soc. Sec.*, No. 2:22-CV-00360-DMC, 2023 WL 3853485, at *7 (E.D. Cal. June 6, 2023) (collecting cases finding the ALJ erred by conflating the two factors and by failing to properly address the factors). Consequently, the ALJ erred by failing to adequately address the regulatory factors and by summarily concluding FNP Lorenz's opinions were unpersuasive.

**IV. Remedy.**

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). "When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 104, 1045 (9th Cir. 2017) (amended January 25, 2018). An "automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule." *Id.* at 1044. "Usually, if additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded [for further proceedings]." *Garrison*, 759 F.3d at 1019 (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)); *see also Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (explaining that the court was not required to enter award of benefits where the findings were insufficient as to whether testimony should be credited as true, and remanding for reconsideration of credibility). Moreover, when "an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014); *Lambert*, 980 F.3d at 1277-78 (remanded because the ALJ erred in failing to provide sufficient reasons for rejecting claimant's testimony and the error was not harmless). It is proper to remand for an award of benefits when: "(1) the record has been fully developed and further

administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Even if all three prongs of the test are met, however, the court may remand for further proceedings when an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled. *Garrison*, 7596 F.3d at 1021.

Here, further development of the record is necessary. First, additional administrative proceedings would provide Plaintiff the opportunity to clarify what is described in his Opening Brief to this Court as "repeated notation[s]" in the medical records that create contradictions regarding Plaintiff's activity level during the relevant period. (Pl. Br. at 19.) While, on the one hand, the medical providers report that Plaintiff was "fully active and able to carry on all pre-disease performance without restriction," his providers report in the same records that "although disease burden is fairly low, the patient is symptomatic . . . and his activity is restricted." (AR. at 322, 325, 467, 470, 473.) Additional evidence could shed light on these discrepancies.

Additionally, even though FNP Lorenz indicates in her "Medical Assessment of Ability to Do Work-Related Physical Activities" that Plaintiff's pain is severe, Plaintiff's medical records sometimes reflect either no pain or mild pain. (AR. at 321, 324, 327, 556, 560, 580, 608.) Similarly, some medical records indicate simply "no action needed" regarding Plaintiff's reported pain, and the records that follow indicate "continue current pain regimen." (AR. at 580, 603.) Plaintiff's reports of no pain or mild pain create doubt regarding his disability. It is recommended that the Court remand for further proceedings.

This Report and Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this Report and Recommendation within which to file specific written objections with the Court. *See* 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 3rd day of January, 2025.

Honorable John Z. Boyle
United States Magistrate Judge